## UNITED STATES v. DZIADUS.

(District Court, N. D. West Virginia. May Term, 1923.)

No. 6967.

1. **Searches and seizures** ⊜⟹3—Affidavit on information and belief not basis for issuance of search warrant.

An affidavit based on information and belief alone is wholly insufficient as a basis for issuing a search warrant.

2. **Intoxicating liquors** ⊜⟹248—Affidavit held insufficient as basis for issuance of search warrant.

Averment in an affidavit that three months previously a still was found on the premises *held* insufficient to establish probable cause for believing that the premises were being used for the unlawful sale of liquor, which would authorize issuance of a search warrant for a private dwelling.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Searches and seizures ⊚⇒3—Execution of search warrant by stranger thereto held unlawful.**

Execution of a search warrant by a person not named therein, nor shown to have been acting for a person so named and in his presence, *held* unlawful.

**4. Intoxicating liquors ⊚⇒249—Mandate of search warrant.**

A search warrant issued under National Prohibition Act, tit. 2, § 25, must contain specific directions to officer named therein as to what he shall do under it, which must conform to the requirements of Act June 15, 1917, tit. 11, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f).

**5. Criminal law ⊚⇒395—Evidence unlawfully secured under search warrant not admissible against defendant.**

Evidence unlawfully secured under a search warrant is not admissible against a defendant, from whom it was seized.

**6. Intoxicating liquors ⊚⇒255—Contraband property, unlawfully seized not returnable.**

A petitioner is not entitled to return of property unlawfully seized from him under a search warrant, if it is of the class in which no property rights exist, under National Prohibition Act, tit. 2, § 25.

**7. Criminal law ⊚⇒394—Testimony to facts learned through unlawful search inadmissible against defendant.**

Testimony to facts learned, and information obtained, while conducting an unlawful search of a defendant's premises is inadmissible against him.

Criminal prosecution by the United States against Joe Dziadus. On petition by defendant to suppress evidence and for return of property seized under search warrant. Granted as to suppression of evidence.

T. A. Brown, U. S. Atty., and H. D. Matthews, Asst. U. S. Atty., both of Parkersburg, W. Va., for the United States.

J. Allan Garden, Frank A. O'Brien, and J. Bernard Handlan, all of Wheeling, W. Va., for defendant.

BAKER, District Judge. An information is filed charging the defendant, in three counts, on or about the 1st day of November, 1922, with (1) the unlawful possession of intoxicating liquor; (2) the unlawful possession of fifteen gallons of mash; and (3) the manufacturing of intoxicating liquor. Defendant files a petition controverting the warrant under which a search of his dwelling was made by federal agents, praying the suppression of any evidence secured under such warrant and search, and the return of one-half gallon of "moonshine and 15 gallons of mash," seized by the officer.

The United States Attorney demurs to the petition. The plain provisions of the Constitution limiting the authority of federal agents to search the persons, houses, papers, and effects of the people are so well recognized in our law that no discussion of them is here required. The latest pronouncement on the subject was delivered by Mr. Justice Clarke, when he said, discussing the Fourth and Fifth Amendments:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319) have declared the importance to political liberty

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen, the right, to trial by jury, to the writ of habeas corpus and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers." Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647.

Congress has, of course, never attempted to enlarge these constitutional limitations. It has, however, from time to time, prescribed the methods by which search alone, or both search and seizure, may be made—doubtless influenced by its conception of what would be justifiable and proper means of enforcing the particular statute then being enacted. Search and seizure warrants in prohibition cases are thus authorized, and the method of their issuance, their execution, and their return, is plainly set out in section 25, title 2, National Prohibition Act (41 Stat. 315) together with title 11, Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v).

The warrant at bar must comply with all the provisions of these congressional directions, or it must be held invalid, and the evidence secured thereunder held inadmissible, against the petitioner. Let us read the law:

"A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. * * * No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house."

Section 25, title 2, National Prohibition Act.

"A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.

"The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"The affidavits or depositions *must set forth the facts* tending to establish the grounds of the application or probable cause for believing that they exist.

"If the judge or commissioner is thereupon satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States, stating the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof, and *commanding him forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner.*

"A search warrant may in all cases be served by any of the officers men-

tioned in its direction, *but by no other person*, except in aid of the officer on his requiring it, he being present and acting in its execution. * * *

"The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night. * * *

"When the officer takes property under the warrant, he must give ·a copy of the warrant together with a receipt for the property taken (specifying it in detail) to the person from whom it was taken by him, or in whose possession it was found, or, in the absence of any person, he must leave it in the place where he found the property. * * *

"The judge or commissioner must thereupon, if required, deliver a copy of the inventory to the person from whose possession the property was taken and to the applicant for the warrant."

Act June 15, 1917, c. 30, title 11, Barnes' Code, c. 16, § 10052 et seq.

In the case at bar the affidavit, upon which the warrant is based for the search of the residence of the defendant, after describing the location of the residence, says it—

"Is, as I have reason to believe, and do believe, from reliable information, and by further reason of the fact that said place was raided in August, 1922, and a still found, being used for the purpose of unlawfully storing, possessing, keeping and selling intoxicating liquors."

This affidavit was taken November 1, 1922, and the warrant issued on that date. The warrant was directed to:

"A. B. White, internal revenue officer of the United States for the Northern District of West Virginia, and to his deputies, or any of them, and to George B. Heide, federal prohibition agent."

After reciting a description of the place to be searched, it commanded the officer:

"In the name of the President of the United States, to enter said premises, in the daytime, with necessary and proper assistance, and there diligently to investigate and search into and concerning the violations as aforesaid, and to report and act concerning the same as required of you by law."

The return indorsed on the writ shows that it was executed by one Alonzo Prince, who seized certain liquors and mash. This warrant is attacked on the following grounds: (1) No facts are set forth tending to establish the grounds of the application or probable cause for believing that they exist. (2) That it was not served by any of the officers mentioned in its direction, and by no other person. (3) That it does not command the officers to whom it was directed to search the person or place named for the property specified and to bring it before the commissioner, and upon other grounds.

For convenience we will discuss these alleged defects under the headings of: (1) Probable Cause. (2) Execution of Warrant. (3) The Mandate.

[1] *Probable Cause.* The provisions of the statute are plain. No warrant shall issue to search any private dwelling unless facts are adduced before the commissioner tending to establish that it is being used for the unlawful sale of intoxicating liquor, and no warrant shall issue for the search of houses used for other purposes than dwellings unless facts tending to establish probable cause for believing

the law is being violated are reduced to writing and sworn to before the officer issuing the writ. Affidavits for search warrants based upon information and belief alone, are wholly insufficient as a basis for issuing such warrants. U. S. v. Ray & Schultz (D. C.) 275 Fed. 1004; Veeder v. U. S., 252 Fed. 414, 164 C. C. A. 338; U. S. v. Michalski (D. C.) 265 Fed. 839; U. S. v. Rykowski (D. C.) 267 Fed. 866; Giles v. U. S. (C. C. A. 1) 284 Fed. 208. No search warrant shall issue based upon suspicion, belief, rumors, or surmises. U. S. v. Kelih (D. C.) 272 Fed. 484; Veeder v. U. S., 252 Fed. 414–418, 164 C. C. A. 338; U. S. v. Armstrong (D. C.) 275 Fed. 506 (see opinion 508); Ripper v. U. S., 178 Fed. 24, 101 C. C. A. 152; U. S. v. Borkowski (D. C.) 268 Fed. 408; U. S. v. Pitotto (D. C.) 267 Fed. 603.

[2] In the case at bar, the allegations that contraband property had been found on the premises three months prior to the date of the affidavit, which presumably was then seized and carried away, can hardly be regarded as a statement of fact required by the statute, and which in this case would be that the residence is being used for the unlawful sale of intoxicating liquor. The warrant is clearly bad on that ground.

[3] *Execution of Warrant.* This writ was directed to the internal revenue officer in the Northern district of West Virginia and his deputies, and to "George B. Heide, Federal Prohibition Agent." It was executed by Alonzo Prince, the return failing to show that the officer to whom it was directed was even "present and acting in its execution." It therefore clearly fails to comply with the requirement that it be "served by any of the officers mentioned in its direction, and by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution." Indeed the only safe method of executing these drastic writs is to comply strictly with all the requirements of the statute. Giles v. United States, supra.

[4] *The Mandate.* The authority to issue federal search warrants is not inherent in any federal court, and the directions given to the officer executing the warrant must strictly comply with the statute authorizing the issuance. Congress has authorized federal agents to perform different duties looking to the enforcement of its various statutes. The officer mentioned in the directions of the warrant must have specific directions as to what he shall do under it.

By Act of Congress July 13, 1866, R. S. § 3462, Barnes' Code, § 5664 (Comp. St. § 6364) courts and commissioners were authorized to issue search warrants authorizing any internal revenue officer to search any premises within his jurisdiction for a fraud upon the revenues, but by that Act he is not required, or even authorized, to bring the property found before the judge or commissioner; neither is he required to leave a copy of the warrant, together with a receipt for the property taken, with the party from whom it was taken by him or in whose possession it was found.

Therefore, for many years the recognized mandate of our search warrants under the Revenue Laws (these being merely search warrants and not search and seizure warrants), commanded the person to whom they were directed "to enter said premises with the necessary and

proper assistance and there diligently to investigate and search into and concerning said fraud and to report and act concerning the same as required by law." (Loveland's Forms of Federal Procedure, 1920 Edition, Page 1856). Under these warrants there was neither purpose nor authority to seize any property whatsoever. The sole purpose was to authorize investigation, to the end that it might be ascertained whether a fraud on the government's revenues was being committed.

Under section 173 of the Federal Penal Code (Comp. St. § 10343) under the caption "Issuance of Search Warrants for Suspected Counterfeits," etc., courts and commissioners are authorized to issue search warrants authorizing any marshal of the United States, or any other person specially mentioned in such warrant, to enter any house, store, building, boat, or other place named in such warrant, and there search for any such counterfeit money, coins, dies, hubs, moulds, plates and other things and for any such obligations and if any such be found, to seize and secure the same and to make return thereof to the proper authority.

Therefore for many years the recognized mandate of search warrants under the counterfeiting laws has commanded the person to whom it was directed, "to enter said premises with the necessary assistance and there search for any such counterfeit money, coins, dies, hubs, moulds, plates and other things, and for any such obligations, and if they be found, to seize and secure the same and to make return thereof to the proper authority." Loveland's Forms of Federal Procedure (1920 Edition) p. 1858. It will be observed that in each of these well-known and well-recognized searches the mandate of the warrant has carefully been made to follow the exact language and requirements of the statute.

There can be no reason in law why a search warrant under the National Prohibition Act must not also be made to follow the exact language and requirements of the statute. The warrant at bar commands the officer—

"to enter said premises * * * and there diligently to investigate and search into and concerning the violations as aforesaid and to report and act concerning the same as required of you by law."

The statute authorizes the issuance, under a proper state of facts, of a warrant, to a proper officer—

"commanding him forthwith to search the person and place named, for the property specified, and to bring it before the judge or commissioner."

The warrant at bar is therefore fatally defective in this particular. Giles v. United States, supra.

It may be said that under these conclusions persons suspected of violations of the Federal Prohibition Act are given greater security against searches of their persons, their houses, their papers and effects, than is accorded suspected violators of the revenue laws and the counterfeiting laws. If such conclusions are correct, Congress has provided such additional security, and it is not the province of any law enforcement officer to violate that security.

[5] The Eighteenth Amendment is part of the supreme law of the

land, but, like many other provisions of the Constitution, it cannot enforce itself. It can be enforced only by congressional enactment. Courts and officers are without authority to act in the enforcement of this amendment save and except as directed by statute. And it follows, as has been so aptly said by the Circuit Court of Appeals of this our own Fourth Circuit, that:

"The warrant thus being void, nothing that was procured under it could be used as evidence against the defendant. To allow this to be done would be in effect to compel the defendant to become a witness against himself, in violation of the Fifth Amendment to the Constitution of the United States, which reads: 'No person * * * shall be compelled in any criminal case to be a witness against himself.'"

See Woods v. United States, 279 Fed. 710 (C. C. A. 4th Circuit, February 9, 1922); Dukes v. United States, 275 Fed. 142 (C. C. A. 4th Circuit, July 21, 1921); Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647.

[6] The petition, among other things, prays for the return of the thing seized. Section 25, title II, National Prohibition Act, declares that no property rights shall exist in any liquor, or property designed for the manufacture of liquor, intended for use in violating this title, or which has been so used. Therefore the petitioner is not entitled to have returned to him anything seized coming under this definition of contraband property. United States v. Rykowski (D. C.) 267 Fed. 866.

[7] Order may go declaring the search warrant invalid and declining to permit the United States to use any property seized as evidence, or otherwise, upon the trial of the cause against the petitioner as defendant. I am also of opinion to reject the testimony of any person attempting to testify to any facts, or to use any information obtained while conducting the unlawful search and seizure, against the defendant.